IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATAUSHA M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-1334-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for SSI and DIB on August 3, 2018 (Tr. 308-317). Plaintiff's application was initially denied on October 31, 2018 (Tr.239-242), and subsequently denied on reconsideration on January 14, 2019 (Tr. 246-251). Upon Plaintiff's request, a hearing was held before ALJ Kathryn Preston on December 12, 2019 (Tr. 123-154). The ALJ issued an unfavorable decision on March 4, 2020 (Tr. 104-122). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

**Issues Raised by Plaintiff**

Plaintiff raises the following issues:

1. The opinion evidence was not properly evaluated.

2. The decision lacks a proper evaluation of Plaintiff's pain.

**Applicable Legal Standards**

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

In her opinion, ALJ Preston followed the five-step analytical framework described above. The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. The ALJ found that Plaintiff has not engaged in substantial gainful

activity since April 17, 2018, the alleged onset date.

The ALJ found that Plaintiff has severe impairments of migraines, with a history of cerebrospinal fluid (CSF) leak; cervical degenerative disc disease with herniated nucleus pulposus; cervical radiculopathy to the left upper extremity; left rotator cuff tendinitis; left acromioclavicular joint osteoarthritis; sacroiliitis; and obesity, but determined these impairments do not meet or equal a listed impairment.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of sedentary work with the following exceptions and/or qualifications: able to lift up to ten pounds occasionally; able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks; unable to climb ladders, ropes, scaffolds, but occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; able to engage in occasional left upper extremity overhead reaching; should avoid even occasional exposure to extreme cold, extreme heat, wetness or humidity, and excessive vibration; able to tolerate moderately noisy work environments; should avoid all exposure to unprotected heights and use of dangerous moving machinery; able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes due to migraines.

Based on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff could not do any past relevant work. However, the ALJ found Plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this

Memorandum and Order.  The following summary of the record is directed to Plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1973 and claimed an alleged disability onset date of April 17, 2018 (Tr. 312).  In her disability report dated August 3, 2018, Plaintiff said she was disabled because of chronic migraines and C5 and C6 herniated disc in back (Tr. 347).  Plaintiff indicated she stopped working on April 16, 2018 because she was terminated from her job and was in a car accident on the next day while going to an interview (Tr. 347).

In her Function Report dated August 24, 2018, Plaintiff indicated she needs assistance dressing, bathing, completing household chores, and caring for her hair, and she needs some assistance feeding herself and using the toilet (Tr. 353).  Plaintiff also indicated she prepares her own meals, but it depends on how she feels and it takes longer than normal (Tr. 358).  Plaintiff wrote she is not comfortable driving anymore and never drives alone (Tr. 359).  She also reported that pain in her shoulder/arms causes difficulty with lifting, reaching, and using her hands; neck and upper back pain keeps her from sitting for long periods of time; and migraines affect her ability to see, complete tasks, concentrate, understand, and get along well with others (Tr. 361).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the December 12, 2019 hearing (Tr. 123). Plaintiff testified her last day of work was April 16, 2018 (Tr. 131).  On the date of onset, Plaintiff was involved in a motor vehicle accident and, since that date, she experiences daily migraines (Tr. 130-131).  Plaintiff testified her migraines are triggered by light, noise, and smell, and they cause her to become dizzy and light-headed (Tr. 132).  Migraines also cause Plaintiff to be nauseous

"24/7" and she vomits usually once a week (Tr. 141). Plaintiff sees her primary care physician for management of her migraines, and Plaintiff recently increased her dosage of medication (Tr. 133). Plaintiff previously tried Botox for her migraines, and testified it helped, but there were still times she needed to call off work due to migraines (Tr. 139). Plaintiff testified she had not received a Botox injection since February 26, 2018 because she did not have any insurance (*Id.*).

Plaintiff testified she tries to accomplish one thing per day, such as cooking or laundry (Tr. 134). Plaintiff becomes dizzy when she bends over (*Id.*). Plaintiff is able to shower on her own (*Id.*).

Plaintiff testified she receives injections for her back, and it provides relief for a few days (Tr. 135). Plaintiff also testified she experiences neck pain, more on her left side, which makes it difficult for her to turn her head back and forth (Tr. 136). Plaintiff takes muscle relaxers and completes physical therapy exercises for her neck pain (Tr. 137).

Plaintiff testified that she takes Indomethacin three times per day for sacroiliitis, Effexor for anxiety, Verapamil for hypertension and migraines, Compazine for nausea, Flexeril for neck and back pain, Butalbital for migraines (but she is weaning off of it), and Ibuprofen for migraines (Tr. 141-143). Plaintiff also uses a Lidocaine patch every 12 hours for migraines (Tr. 143).

With regard to chores, Plaintiff testified she completes her daily hygiene and tries to prepare dinner (Tr. 145). Plaintiff indicated she fell twice in about the last 45 days (Tr. 145).

A vocational expert (VE) also testified at the hearing. The VE testified that a person with Plaintiff's RFC assessment could not do Plaintiff's past work, but she could do other sedentary unskilled jobs, such as a callout operator, order clerk, and document preparer (Tr. 149-151). The VE also testified that if an individual would be absent from work two workdays per month it would

preclude all work. Also, an individual would not be allowed to take an unscheduled break once a day for an hour to lie down in a dark, quiet room, and such requirement would also preclude all employment (Tr. 152).

### 3. Relevant Medical Records

Plaintiff visited the emergency room on October 18, 2017 complaining of a headache, blurred vision, left side paresthesia, nausea, and vomiting (Tr. 440). On physical exam, Plaintiff had mostly normal findings; however, a left-sided muscle spasm was reported (Tr. 442-443). Plaintiff's neurological examination was normal (Tr. 443). A computed tomography (CT) scan showed no evidence of intracranial pathology (Tr. 445, 462).

On November 15, 2017 Plaintiff saw a neurologist, Dr. Siddharth Kaul (Tr. 420). Plaintiff complained of chronic migraines and indicated she wanted to restart Botox for headache management (*Id.*). The examination findings were normal, with a noted normal gait and symmetric limb movements and strength (*Id.*). Plaintiff saw Dr. Kaul for a follow-up appointment on April 6, 2018 to assess her complaint of chronic migraine headaches (Tr. 423). Plaintiff had been receiving Botox therapy and reported a 7-10% reduction in headache frequency and intensity and was to continue the same (Tr. 424).

In April of 2018, Plaintiff was involved in a motor vehicle accident (Tr. 615). She reported to the emergency room complaining of neck, back, and left arm pain, headache, and pain radiating from her lower back to her left leg (*Id.*). Plaintiff's physical examination revealed left-side chest wall soreness, lower back pain with intermittent radiation of pain down the left leg, neck stiffness associated with a decreased range of motion, left shoulder pain, and intermittent headaches (Tr. 617-618). A CT of Plaintiff's cervical spine showed no acute abnormality (Tr.

620).

Plaintiff saw an orthopedist in May and June 2018 (Tr. 660-668). Plaintiff complained of pain in her neck and shoulder, primarily on her left-side (*Id.*). Plaintiff showed decreased sensation in the left forearm down to the fingers, diminished muscle strength on the left, and pain in the shoulder (Tr. 660). Magnetic resonance imaging (MRI) of Plaintiff's cervical spine showed a disc herniation at the C5-C6 level (*Id.*). A cervical spine x-ray showed mild spondylosis change with slight narrowing at C5-6 and C6-7 and some mild osteophyte (*Id.*). During this time, Plaintiff's orthopedist indicated the MRI of the cervical spine confirmed his clinical suspicion of a probable cervical origin and explained the majority of her symptoms (Tr. 667). The orthopedist recommended a six-day Medrol dose pack and an ultrasound guided injection of the subacromial space and AC joint (Tr. 668).

On September 22, 2018, Plaintiff visited the emergency room complaining of a headache located on the left side of her head (Tr. 732). Plaintiff's neurologic examination was normal and, although she showed marked tenderness in her left shoulder, she showed normal range of motion in her musculoskeletal system (Tr. 734-735). Plaintiff was treated with multiple medications and her headache resolved (Tr. 736).

Plaintiff saw a primary care physician for complaints of headache and neck, left shoulder, and left arm pain on October 11, 2018 (Tr. 1906). It was noted Plaintiff has taken many medications for her headaches, as well as Botox (Tr. 1918). Plaintiff was prescribed caffeine pills and Zolmitriptan (*Id.*). Plaintiff was also referred to neurology (Tr. 1919). Plaintiff completed a new patient visit with a neurologist on November 12, 2018 (Tr. 1879). At this appointment, Plaintiff explained she had tried multiple medications without any benefit (Tr. 1886). Plaintiff

indicated that while on medication she continued to have twenty headaches a month that caused her to be bed-bound and unable to participate in life (*Id.*). She reported that Botox injections greatly improved her headache intensity and decreased her frequency of headaches to fifteen times per month (*Id.*). Plaintiff's last Botox injection was in February 2018 as she was having issues with insurance (*Id.*). There were no noted abnormalities related to Plaintiff's neurologic exam (Tr. 1889-90). Plaintiff's dosage of nortriptyline was increased (Tr. 1890). Plaintiff saw her primary care physician again on November 30, 2018 to follow-up on her care (Tr. 1854). Plaintiff reported that the adjustment in her migraine medications had helped, and her headaches were improving, as was her neck pain with medication (Tr. 1861-63). Plaintiff saw her neurologist for a follow-up on January 29, 2019 (Tr. 1825). Plaintiff reported she had not had any relief in her migraines and was involved in another car accident that has caused a sharp shooting back pain down her left leg (*Id.*). Plaintiff's medications were adjusted, and due to new complaints of back pain and left lower extremity weakness a total spine MRI was ordered (Tr. 1837). A spinal MRI was completed on February 22, 2019 and revealed a mild disc bulge at C5-C6 (Tr. 1803).

      Plaintiff saw her primary care physician again on March 8, 2019 to address her migraines (Tr. 1728). On examination, Plaintiff showed decreased sensation in the cervical spine, with limited left hip range of motion (Tr. 1761). She reported she saw neurology in January 2019 and her headaches had improved, but she still had some headache every day (Tr. 1762). Plaintiff was seen by a neurologist on April 29, 2019 (Tr. 1703). Plaintiff reported continued debilitating headaches, lightheadedness when leaning over, and dizziness when quickly standing from a laying position (*Id.*). The physician noted Plaintiff's complaints were suggestive of a cerebrospinal fluid (CSF) leak and Plaintiff was to receive a blood patch (Tr. 706). The physician also noted that

medication overuse and possible sleep apnea were perpetuating her headaches (*Id.*). The blood patch was completed on May 16, 2019 (Tr. 1556). It provided her significant relief for 3-4 days (Tr. 1422). Plaintiff went to the emergency department on May 24, 2019 for her headache and received Toradol, Compazine, IVF, and lidocaine patches that also provided temporary relief (Tr. 1423, 1499-1500). Plaintiff underwent another blood patch procedure in June 2019 (Tr. 1406).

In July 2019, Plaintiff received a sacroiliac joint injection to address her complaints of left lower back and hip pain (Tr. 1331). Plaintiff underwent a cervical, thoracic, and lumbar myelogram in August 2019 to address her complaints of headache, back pain, and the concern for a cerebrospinal fluid leak (Tr. 1252). There was no definite evidence to suggest cerebrospinal fluid leak and there were no significant neural foraminal or spinal canal stenosis in the thoracic or lumbar spine (Tr. 1244). Cervical degenerative disc and joint disease at C5-C6 resulting in mild bilateral neural foraminal stenosis and mild spinal canal stenosis was noted (*Id.*). Plaintiff continued to seek treatment for complaints of migraines in August and September 2019 (Tr. 1054, 1145, 1178). During this time, Plaintiff reported her migraines were more intermittent and had improved with blood patch and other treatment (Tr. 1150-51, 1188).

4. **State Agency Consultants' Opinions**

On October 18, 2018, Dr. Lenore Gonzalez reviewed Plaintiff's treatment records and found that while Plaintiff's medically determinable impairments can reasonably be expected to produce her pain or other symptoms, her statements about the intensity, persistence, and functionally limited effects of the symptoms were not substantiated by the objective medical evidence alone (Tr. 161). Dr. Gonzalez found Plaintiff had exertional limitations and could: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds; stand and/or walk

about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; limit pushing and/or pulling in her upper left extremity; occasionally climb ramps/stairs, crouch, stoop, crawl, kneel; never climb ladders, ropes, scaffolds; and avoid concentrated exposure to extreme cold, extreme heat, wetness, noise, vibration, and hazards (Tr. 162-164).

Dr. Frank Mikell reviewed Plaintiff's treatment records on January 10, 2019, and generally found the same limitations for Plaintiff as Dr. Gonzalez. However, Dr. Mikell found Plaintiff had no limitations related to her exposure to extreme cold and extreme heat (Tr. 230-231).

### 5.  Dr. Emma Killoran Residual Functional Capacity Questionnaire

Dr. Killoran completed a Residual Functional Capacity Questionnaire concerning Plaintiff on December 5, 2019 (Tr. 1943-1948). Dr. Killoran indicated she is a primary care physician and treated Plaintiff for the past one-and-a-half years for migraine headaches. Dr. Killoran indicated that Plaintiff experiences nausea/vomiting, malaise, photosensitivity, mood changes, and mental confusion associated with her headaches, and that she suffers headaches daily. Dr. Killoran noted that Plaintiff's headaches are triggered by bright lights, lack of sleep, stress, strong odors, and weather changes, and that bright lights, moving around, and noise make Plaintiff's headaches worse. Dr. Killoran indicated that when Plaintiff has a headache she would generally be precluded from performing basic work activities and would need to take unscheduled breaks "up to daily" for hours before returning to work. Dr. Killoran asserted Plaintiff is incapable of "low stress" jobs as she is "physically incapable during times of migraine," and estimated Plaintiff would be absent more than four times per month as a result of her impairments. Finally, Dr. Killoran remarked that Plaintiff would need to avoid dust, fumes, noise, and gases.

## Analysis

I.   **ALJ's Evaluation of Opinion Evidence**

Plaintiff first takes issue with the ALJ's handling of the medical opinions, asserting the ALJ failed to adequately explain her finding that the opinions of Drs. Gonzalez and Mikell were "not persuasive." Plaintiff also argues the ALJ misunderstood the opinion of treating provider Dr. Killoran, and, in rejecting the same, Plaintiff contends the ALJ impermissibly made her own independent medical determination.

An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Although the ALJ must consider all of these factors, she need not discuss each factor in her opinion; the ALJ need discuss only the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

First, Plaintiff asserts the ALJ's conclusion with regard to the opinions of Drs. Gonzalez and Mikell was insufficient because the ALJ did not provide any explanation of what evidence is consistent with the limit to sedentary work or what evidence is not consistent with the doctors' findings or what evidence supports Plaintiff's ability to perform sedentary work. Plaintiff's argument is misplaced. The ALJ specifically found that the evidence in the record was consistent

with a limitation to sedentary work rather than light work, as opined by Drs. Gonzalez and Mikell, due to Plaintiff's experiencing chronic migraines that caused blurred vision, nausea, and dizziness, along with decreased extremity strength and sensation (Tr. 115). While said explanation may not have as been robust as Plaintiff would like, the ALJ need not specifically list each piece of evidence that was inconsistent with the opinions of Drs. Gonzalez and Mikell, and the ALJ's explanation satisfied the requirements under the Regulations.

Plaintiff also contends the ALJ failed to consider the entirety of Dr. Killoran's opinion, focusing instead on one question in the migraine residual functional capacity questionnaire. Plaintiff contends the ALJ's dismissal of Dr. Killoran's opinion as a statement of disability instead of an opinion of Plaintiff's limitations and restrictions was improper.

Pursuant to 20 C.F.R. § 1520b(c), statements on issues reserved to the Commissioner is evidence that is inherently neither valuable nor persuasive and, thus, no analysis need be provided about how it was considered in reaching a decision. The Court finds that Dr. Killoran's notation that Plaintiff is "incapable of even low stress jobs" because she is "physically incapable during times of migraine" is the equivalent of a statement that Plaintiff is not able to work and, as such, the ALJ correctly dismissed it. The Court finds, however, that the ALJ was not entitled to discount the remainder of the medical opinion of Dr. Killoran, including her opinions that Plaintiff would need to take unscheduled breaks "up to daily" in an eight-hour working day and that Plaintiff's impairments would cause her to be absent from work more than four times per month. Indeed, the ALJ noted only that Dr. Killoran's "opinion is not consistent with the objective medical evidence contained in the record as a whole." While the ALJ need not identify all the evidence considered in arriving at this conclusion, some elaboration as to the inconsistency must be

provided. *See McKnight v. Kijazki*, Case No. 20-cv-5971, 2022 WL 4132448, at *18 (N.D. Ill. Sept. 12, 2022) (ALJ properly evaluated physician's opinions and explained that the opinion was both supportable and consistent with the record as a whole and the ALJ elaborated on both factors by citing specific medical findings in the record); *Jill A.W. v. Kijakasi*, Case no. 20-C-3854, 2022 WL 225879, at *3 (N.D. Ill. Jan. 26, 2022) ("The ALJ provided sufficient reasons for disregarding Dr. Barboi's opinion and her analysis is supported by more than a mere scintilla of evidence."). Further, there is no discussion about supportability, as required under the Regulations.

The Court further finds the ALJ's failure to consider Dr. Killoran's opinion did not constitute harmless error as the decision of the ALJ did not consider the issue of Plaintiff needing to take unscheduled breaks or have absences more than four times per month. *See Wallender v. Saul*, Case No. 20-CV-808-SCD, 2021 WL 734098, at *7 (E.D. Wis. Feb. 25, 2021) (finding the ALJ did not fail to consider an entire line of evidence contrary to her conclusion in failing to consider a physician's statement because the ALJ carefully and thoroughly considered the underlying medical conditions discussed by the physician, and explained why those impairments did not warrant any limitations beyond the RFC the ALJ assessed).

**II.      ALJ's Evaluation of Plaintiff's Pain**

Plaintiff contends the ALJ did not sufficiently explain why she rejected Plaintiff's testimony regarding her subjective complaints of pain.

ALJs use a two-step process for evaluating a claimant's impairment-related symptoms. SSR 16-3p, 2017 WL 5180304, at *1. First, the ALJ must "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms. *Id.* at *3. Second, the ALJ must "evaluate the intensity and

persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

"In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). The findings of the ALJ as to the accuracy of the plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

Plaintiff asserts the ALJ did not specifically point to inconsistencies between Plaintiff's complaints of pain and evidence in the record. Plaintiff also asserts the ALJ did not discuss what activities of daily living she is able to perform or how those abilities demonstrate the ability to perform sedentary work as outlined in the RFC. Plaintiff complains the ALJ merely summarized

the medical records in support of her finding of inconsistencies.

An ALJ is not required to do a "point-by-point credibility assessment" as long as she "consider[ed] the relevant evidence, compare[d] the consistency of [Plaintiff's] testimony against the objective record and ground[ed] h[er] credibility finding in medical evidence." *McCurrie v. Astrue*, 401 F. App'x 145, 149 (7th Cir. 2010). Here, the ALJ conducted a thorough analysis of Plaintiff's medical history and objective medical findings, specifically noting that despite Plaintiff's complaints of neck and shoulder pain and headaches, Plaintiff had reported some improvement in her headaches and back pain with treatment, and that her neurologic examinations were generally normal. The ALJ also cited Plaintiff's report that she was able to prepare simple meals and perform activities of daily living, even though it was difficult for her.

Plaintiff lists items of evidence included in her Function Report that was not specifically mentioned in the ALJ's decision. An ALJ, however, need only "minimally articulate his or her justification for rejecting or accepting specific evidence of a disability," and "need not provide a written evaluation of every piece of evidence." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (internal citation omitted).

For these reasons, the Court finds the ALJ's assessment of Plaintiff's subjective complains were adequately articulated. However, because of the error cited above concerning the evaluation of Dr. Killoran's opinion and the finding that the failure to consider the same was not a harmless error, remand is required.

## Conclusion

For these reasons, Plaintiff's request for a remand is **GRANTED IN PART** as discussed above. The Commissioner's final decision denying Plaintiff's application for social security

disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 28, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**